IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA MARIANNE MAIDEN,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 2:17-cv-00420-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Jessica Marianne Maiden ("Maiden") seeks judicial review of the Commissioner's decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is not based on proper legal standards or supported by substantial evidence, the decision is REVERSED, and this case is REMANDED for further proceedings.

## BACKGROUND

    Maiden filed applications for SSI on March 7, 2013, and children's disability benefits under Title II on April 4, 2013, alleging disability onset dates of January 1, 1997, and December 1, 2014, respectively. Tr. 84-87.[1] After the Commissioner denied the applications initially and upon reconsideration, Maiden requested a hearing before an administrative law judge ("ALJ"),

---

[1] "Tr." refers to the transcript of the Social Security Administration's ("SSA") administrative record.

1 - OPINION AND ORDER

which was held on November 10, 2015. Tr. 35-53.[2] On December 1, 2015, ALJ Paul G. Robeck issued a written decision finding Maiden not disabled. Tr. 20-28. On January 23, 2017, the Appeals Council denied Maiden's subsequent request for review, so the ALJ's decision became the final decision of the Commissioner. Tr. 1-3. This appeal followed.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, I review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

## DISCUSSION

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") utilizes a five-step sequential

---

[2] Maiden withdrew her request for children's disability benefits under Title II during her hearing. Tr. 20. 36-37. Accordingly, only the Commissioner's denial of her request for SSI benefits under Title XVI is at issue in this case.

2 - OPINION AND ORDER

evaluation to determine disability. 20 C.F.R. §§ 404.1520; 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden then shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is found not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

At step one, the ALJ determined Maiden had not worked since March 7, 2013, the application date. At step two, the ALJ concluded that Maiden had the following severe impairments: fibromyalgia; depression; and anxiety. Tr. 22. The ALJ noted that Maiden's psoriatic arthritis was well-controlled with Humira, and therefore did not find it "severe." Tr. 23. Between steps three and four, the ALJ assessed Maiden's RFC. He determined Maiden retains the capacity to perform light work, except that she is limited to unskilled work with incidental public contact and occasional postural activities. Tr. 24. At step four, the ALJ found Maiden did not have any past relevant work. Tr. 27. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Maiden could perform jobs that exist in significant numbers in the national economy, including photocopy machine operator, and seedling sorter. Tr. 27-28.

Maiden contends the ALJ: (1) erroneously discredited her symptom testimony; and (2) erroneously discredited the opinion of her treating physician in favor of the state agency physician's opinions.

**I. Credibility Analysis**

Maiden argues the ALJ erred by rejecting her subjective symptom testimony. An ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir.2007). However, a negative credibility finding made solely because the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence" is legally insufficient. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Nonetheless, the ALJ's credibility finding may be upheld even if not all of the ALJ's rationales for rejecting claimant testimony are upheld. *See Batson*, 359 F.3d at 1197.

Maiden argues that the ALJ cherry-picked the record to establish that her testimony was inconsistent with her activities of daily living ("ADLs") and that she had improved with treatment, while ignoring evidence that Maiden's symptoms wax and wane, and therefore render her unable to sustain regular work. *See, e.g.*, *Garrison v. Colvin*, 759 F.3d 992, 1017 (9th Cir.

2014). The ALJ specifically noted that Maiden's Humira injections were helping her psoriasis and fibromyalgia-related pain in March 2014, and that in September 2015, Dr. Hoffman observed she had much better functionality, as she was "not close to bedridden as she had been in the past." Tr. 488. However, there is a sizeable gulf between not being bedridden due to pain and being able to sustain gainful employment, as the Ninth Circuit has frequently reiterated. *See, e.g.*, *Cooper v. Bowen* 815 F.2d 557, 661 (9th Cir. 1987) (claimant need not vegetate in dark room in order to qualify for benefits). Contrary to the ALJ's finding, Dr. Hoffman's comment supported Maiden's allegation that she had been "bedridden" at times, and Dr. Hoffman additionally observed that despite Maiden's improvement, she was "acutely tearful, as a result of her functional status, difficulty with ADLs, [and] chronic pain." Tr. 488.

Similarly, although Dr. Daoud noted Maiden's good response to Humira in March 2014, the doctor nevertheless observed that Maiden still had significant pain complaints. Tr. 529. Maiden also reported pain to Dr. Daoud in August 2014 despite better activity levels. Tr. 531-32. Maiden reported interval flares of pain in January 2015 which did not prompt Dr. Daoud to increase her dosage of Humira, but by July 2015 she had painful joints and increased psoriasis. Tr. 535-537. In September 2015, Dr. Hoffman observed "significant flaking and irritation on the elbows and knees," and the next month Dr. Daoud reported a "significant flare of her skin disease," including a painful, itchy rash which was progressing on her legs and feet. Tr. 488, 589-90. Although Dr. Daoud reported "significant improvement in her skin disease" in January 2016, Maiden also reported worsening pain, which the doctor attributed to fibromyalgia. Tr. 593. In June 2016, Maiden continued to report "significant skin complaints" and "increased pain in knees and hips," although Maiden's psoriatic rash had cleared. Tr. 595-96.

Accordingly, the record as a whole does not support the ALJ's finding that overall, Maiden has had "a good response to treatment." Tr. 25. Indeed, as SSR 12-2p sets out, "for a person with [fibromyalgia], we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have "bad days and good days." 2012 WL 3104869, at *6. Medical improvement "must be read in the context of the overall diagnostic picture the provider draws . . . [because] [o]ccasional symptom-free periods are not inconsistent with disability." *Ghanim*, 763 F.3d at 1162 (citations omitted) (internal quotation marks and ellipses omitted). Accordingly, the ALJ here appeared to give credence to Maiden's occasional reports of waning pain symptoms and increased functionality, but glossed over the many reports of chronic pain and impaired functionality. *See Garrison*, 759 F.3d at 1018 ("[T]he data points [the ALJ] choose[s] must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard.") (emphasis in original).

The ALJ also provided a brief passage explaining why Maiden's ADLs contradicted her allegations that she is "bedridden at times" and "cannot lift a hairbrush half the time." Tr. 25. For the reasons discussed above, the finding regarding being bedridden was not clear and convincing. Further, although the record includes a number of examinations reflecting normal hand functioning, other records demonstrated abnormal results, including diminished sensation, weakness, and pain. *See* Tr. 441, 470-71, 537, 592-93, 595-96. As such, the record reflects a significant history of hand complaints, which is not inconsistent with Maidens assertion that she cannot hold her hairbrush "half the time." Similarly, although Maiden reported being able to assist family members on occasion and provide basic care for her dependent sons, the ALJ's finding was not clear and convincing, as "the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations." *Trevizo v. Berryhill*, 871

F.3d 664, 682 (9th Cir. 2017). Indeed, Maiden indicated that although she is able to perform some basic household chores, they require an inordinate amount of time, which suggests that she either takes breaks or works at a pace incompatible with normal workplace requirements. *See* Tr. 245; *Fair*, 885 F.2d at 603. The ALJ's findings were not clear-and-convincing.

The ALJ additionally found that Maiden's mental symptoms improved with medications, such that by December 2014, she could perform all of her ADLs including caring for her children. Tr. 25-26. Maiden does not appear to contest the ALJ's findings in this regard, and therefore the Court declines to disturb the ALJ's finding. However, the Court notes that Maiden did not assert that her mental symptoms *alone* are disabling, and furthermore, the ALJ did not identify with any degree of specificity what testimony the evidence of improved mental well-being undermined. *See, e.g.*, *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (ALJ must state which testimony is not credible and what evidence supports the finding). Nevertheless, because the ALJ provided invalid rationales for finding Maiden's physical allegations non-credible, the ALJ's finding with regard to Maiden's improved mental symptoms is insufficient to render the other errors harmless. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (a weak, but otherwise valid, rationale may be insufficient to affirm a negative credibility finding) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

**II. Medical Opinion Evidence**

An ALJ is responsible for resolving ambiguities and conflicts in the medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must give clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633 (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted). On this record, the treating and examining doctors' opinions are contradicted by the state medical examiners. Tr. 20-21. Accordingly, the ALJ's reasons for rejecting the treating and examining physicians must be specific and legitimate, and supported by substantial evidence. *See Garrison*, 759 at 1012.

The ALJ provided a perfunctory dismissal of the medical opinion of Dr. Hoffman, who indicated Maiden could never lift 20 pounds, could only lift 10 pounds occasionally, was limited to standing and walking for four hours and sitting for less than two hours per workday, and would require breaks every 30 to 60 minutes, among other limitations. Tr. 26, 436-39. The ALJ accorded "little weight" to the doctor's assessment, noting the limitations were not supported by specific evidence, and were based on Maiden's purportedly non-credible symptom allegations. Instead, the ALJ accorded great weight to the non-examining State agency consultants, which he found "more consistent with the treatment records, which reflected a good response to treatment." Tr. 26.

For the reasons articulated above, two of the ALJ's rationales for rejecting Dr. Hoffman's assessment are not valid: (1) the ALJ's erroneous credibility finding, and (2) purported

Nonetheless, treating or examining physicians are owed deference and will often be entitled to the greatest, if not controlling, weight. *Orn*, 495 F.3d at 633 (citation and internal quotation omitted). An ALJ can satisfy the substantial evidence requirement by setting out a detailed summary of the facts and conflicting evidence, stating his interpretation, and making findings. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999). However, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted). On this record, the treating and examining doctors' opinions are contradicted by the state medical examiners. Tr. 20-21. Accordingly, the ALJ's reasons for rejecting the treating and examining physicians must be specific and legitimate, and supported by substantial evidence. *See Garrison*, 759 at 1012.

The ALJ provided a perfunctory dismissal of the medical opinion of Dr. Hoffman, who indicated Maiden could never lift 20 pounds, could only lift 10 pounds occasionally, was limited to standing and walking for four hours and sitting for less than two hours per workday, and would require breaks every 30 to 60 minutes, among other limitations. Tr. 26, 436-39. The ALJ accorded "little weight" to the doctor's assessment, noting the limitations were not supported by specific evidence, and were based on Maiden's purportedly non-credible symptom allegations. Instead, the ALJ accorded great weight to the non-examining State agency consultants, which he found "more consistent with the treatment records, which reflected a good response to treatment." Tr. 26.

For the reasons articulated above, two of the ALJ's rationales for rejecting Dr. Hoffman's assessment are not valid: (1) the ALJ's erroneous credibility finding, and (2) purported

inconsistency with the treatment records, which reflected waxing and waning of pain and flares of psoriatic arthritis, rather than a clear pattern of improvement.

Maiden argues that the ALJ erroneously determined Dr. Hoffman's assessment was unsupported by objective evidence, because his treatment notes consistently reflected waxing and waning of pain symptoms. Indeed, Dr. Hoffman indicated that his assessed limitations were based on Maiden's complaints of "consistent chronic complaints." Tr. 439. The Commissioner accurately asserts that Dr. Hoffman did not *list* any objective test results to justify the degree of limitations assessed, however, contrary to the Commissioner's argument, Dr. Hoffman made numerous clinical findings during the extended period over which he treated her, including various findings of pain and numbness, as well as observations of signs of psoriasis. *See, e.g.*, Tr. 464-65, 472-73, 486-87. Nevertheless, the Court agrees that there is little clinical evidence that explicitly correlates to Dr. Hoffman's assessed limitations regarding standing and walking, manipulation of hands and arms, and lifting and carrying. *See* Tr. 436-38. Although "pain" may well limit Maiden to the extent Dr. Hoffman assessed, the ALJ did not err in finding that the doctor did not adequately support the limitations assessed with concrete clinical findings. In short, on those occasions when Maiden reported significant pain, Dr. Hoffman's notes do not include evidence that he evaluated her ability to sit, stand, or walk, manipulate objects with her hands, or lift and carry. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (ALJ need not accept a physician's opinion that is brief, conclusory, or unsupported by objective findings); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (physician's reports should demonstrate how a claimant's symptoms translate into specific functional deficits). Although Maiden provides an alternative interpretation of Dr. Hoffman's

opinion, the Court is bound to affirm the ALJ's interpretation, where, as here, it is rational and supported by the record. *Batson*, 359 F.3d at 1193.

Although the Court does not find legal error in the ALJ's rejection of Dr. Hoffman's opinion for lack of sufficient clinical evidence, it would be inconsistent to affirm the ALJ's finding that the state agency physician opinions should be accorded "great weight" despite the absence of clinical findings. Tr. 26. In stark contrast to Dr. Hoffman, who presumably based his opinion on his personal treatment relationship with Maiden over a period of years, the state agency consultants never treated nor examined Maiden at all. Although the state agency physicians assessed specific functional limitations, their opinions were no more supported by specific clinical findings than Dr. Hoffman's. *See* Tr. 79-80, 101-02. Although the ALJ found the non-examining physician opinions were "consistent with the records reflecting good response to treatment," the record simply does not reflect that conclusion for the reasons discussed herein. Similarly, the state agency doctors opinions are not consistent with Maiden's uncontradicted testimony that although she can perform ADLs, they require an inordinate amount of time to complete. Furthermore, the state agency physician opinions were rendered in 2013 and 2014, and were therefore rendered without the benefit of the full longitudinal medical record, which included a number of chart notes describing continuing fibromyalgia pain and flares of psoriasis, as noted by Dr. Daoud in 2015 and 2016. *See* Tr. 588-96. As such, the ALJ erred in according the state agency physicians' opinions great weight. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (the opinions of non-examining physicians cannot alone constitute substantial evidence).

///

///

**III. Remand for Further Proceedings**

Maiden argues that because the ALJ erred in evaluating her symptom testimony, it should be credited as true, and benefits awarded. However, the Court does not reach the issue of crediting Maiden's testimony because the administrative record is incomplete. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) ("A district court cannot proceed directly to credit a plaintiff's testimony as true and then look to the record to determine whether any issues are outstanding, as 'this reverses the required order of analysis'") (quoting *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015)). Here, the record clearly demonstrates that Maiden's impairments have continued to cause waxing and waning pain despite treatment, and that she continues to have pain and skin outbreaks due to psoriatic arthritis. Although Maiden's treating physician believes she has significant functional limitations that prevent her from working, the record contains scant evidence of objective testing to support or undermine the conclusions drawn by Dr. Hoffman, or, for that matter, the state agency physicians. Further proceedings are therefore required to fully develop the record. Because the extent of Maiden's functional impairment is ambiguous on this record, the ALJ should, on remand, order a consultative examination to evaluate the severity of Maiden's physical limitations. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) (ALJ's duty to further develop the record is triggered where there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence) (citations omitted). Subsequently, the ALJ should reapply the sequential evaluation process based on the completed record.

///

///

///

## CONCLUSION

The ALJ's decision is not free of harmful legal error and is not supported by substantial evidence. The Commissioner's final decision is therefore REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this  27th   day of February 2018.

                                            s/ Michael J. McShane
                                            Michael McShane
                                            United States District Judge